IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RODRIGO LOZANO,)
)
      Plaintiff,)
)
v.) No. 04 C 2784
) Paul E. Plunkett, Senior Judge
KAY MANUFACTURING COMPANY,)
)
      Defendant.)

## MEMORANDUM OPINION AND ORDER

Rodrigo Lozano ("Plaintiff") has sued Kay Manufacturing Company ("Kay" or "Defendant") for its alleged violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* Lozano claims Kay violated his rights by refusing to offer benefits as provided by FMLA. Kay has filed a Federal Rule of Civil Procedure ("Rule") 56 motion for summary judgment alleging that there is no genuine issue of material fact as to whether Defendant was in violation of FMLA because Plaintiff has failed to plead each element of an FMLA violation. For the reasons set forth below, Defendant's motion is denied.

## Background

In January 1999, Plaintiff was hired as a machine operator with Kay and remained in that position until his termination in April 2002. (Defs.' LR 56.1(a)(3) Stmt. ¶¶ 4, 5.) Plaintiff reported to Wayne Raker and operated a "chucker" machine, which is a machine that grinds and finishes customized metal pieces. (*Id.* ¶¶ 9, 10, 11.) To operate the machine, Plaintiff manually inserted and tightened metal parts into the clamp or "chuck" of the machine. (*Id.* ¶ 13.) At each work station,

there were written procedures posted to instruct how to properly operate the machine. The procedures also required that the parts were to be checked for conformity at the beginning of each shift, every fifteen minutes during the shift, after lunch, and at the end of the shift. (*Id.* ¶¶ 14, 16, 17, 20.) Furthermore, the procedures directed employees to notify a supervisor if a problem arose with the machine or tools. (Def.'s LR 56.1(a)(3) Stmt. ¶ 24.) However, Plaintiff claims that these posted procedures were often ignored. (Pl.'s LR 56.1(b) Stmt. ¶¶ 14, 16, 24.)

Prior to mid-April 2000, Plaintiff and other machinists received oral warnings for producing nonconforming parts from time to time. After mid-April however, the frequency of Plaintiff's violations began to increase. On April 21, 2000, Plaintiff was issued a written warning for running his machine without checking the conformity of the parts. (Pl.'s LR 56.1(b) Stmt. ¶¶ 28, 29.) On August 3, 2001, Plaintiff was cited for incorrectly creating customized parts. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 25, 33.) Later that same month, Plaintiff's machine broke down. He tried to repair it on his own because he alleges his supervisor told him to figure out the problem. (Pl.'s LR 56.1(b) Stmt. ¶ 36.) On August 24, 2001, Plaintiff was issued another written warning and was put on probation. Plaintiff admits he received this warning and probation, but contends that the reasons for the warning do not accurately recount what occurred. (*Id.* 37, 38). Lozano was taken off probation during his January 2002 performance evaluation. (*Id.* 43.)

In January 2002, Plaintiff was absent from work due to an illness characterized by the hospital as hyperglycemia. ((Def.'s LR 56.1(a)(3) Stmt. ¶ 44, 46.) Plaintiff was then seen in the hospital on February 5, 2002, and was discharged with a diagnosis of tremors, diabetes and hyperventilation. (*Id.* 47, 48.) Plaintiff was subsequently absent from work from February 6, 2002 to March 17, 2002. (Pl.'s LR 56.1(b) Stmt. ¶ 49.) During this absence, Plaintiff received discharge

papers from a hospital stating a diagnosis of delirium tremens and diabetes mellitus. (Def.'s LR 56.1(a)(3) Stmt. ¶ 51.) Hospital records also show that Plaintiff was seen because of suicidal ideation and chronic drug overdose and that Plaintiff suffered from major depression and panic attacks. (Def.'s LR 56.1(a)(3) Stmt. ¶ 53, 55; Pl.'s LR 56.1(b) Stmt. ¶ 53, 54, 56.) Also, in March 2002, while at one of the hospitals, Plaintiff told the treating physician of his hand pain and the physician told him "he might have carpal tunnel syndrome" and that he should look into it with his doctor. (Def.'s LR 56.1(a)(3) Stmt. ¶ 60 and Ex. 3, at 149-50.)

On March 18, 2002, Plaintiff presented a note stating that he had been in doctor's care, and he was able to return to work on a full-time basis, and he was allowed to do so. (Def.'s LR 56.1(a)(3) Stmt. ¶ 61.) Kay had paid Plaintiff short-term disability benefits for his extended absence from February 6, 2002 to March 17, 2002. (Id. ¶ 58.) Plaintiff's application for short-term disability benefits stated that he had been absent because of anxiety and diabetic complications, as well as major depression and panic attacks. (Pl.'s LR 56.1(b) Stmt. ¶ 59.) Plaintiff's doctor, Darryl Forston, considered Plaintiff's depression and anxiety as "serious" health conditions. (Id. 91.) Plaintiff informed Kay's human resources department of his mental diagnosis. (Id. 105.) After his return in March 2002, Plaintiff told his supervisor that "his hand did not feel right" and that he had a problem and that he felt there was something wrong with his hand. (Def.'s LR 56.1(a)(3) Stmt. ¶ 62). When Plaintiff informed his supervisors of his hand discomfort, he was told to slow down. (Id 85.) Plaintiff did not share this information with any other Kay representatives. (Pl.'s LR 56.1(b) Stmt. ¶ 63.)

According to Lozano, he was able to perform his job, except for his limitations resulting from his major depression, severe panic/anxiety disorder, ulnar nerve disorder and carpal tunnel syndrome

("CTS"). (Pl.'s LR 56.1(b) Stmt. ¶ 84.) Plaintiff believes that Raker was aware of his CTS symptoms, but that Lozano was unaware of the FMLA benefits available for such a condition. (*Id.* 87, 88.)

Meanwhile, Plaintiff admittedly continued to make mistakes. On March 20, 2002, he improperly loaded a machine and consequently made non-conforming parts that had to be discarded. (*Id.* 64.) On April 1, 2002, the machine was again improperly sized. Plaintiff states that the mistake was due to his hand problems, but concedes he did not advise his supervisor. (*Id.* 65.) On April 11, 2002, Plaintiff also had to throw several parts out due to improper loading and again attributed this to his hand problems. (*Id.* 66.) On April 15, 2002, Plaintiff was observed not "blowing out the chucks" as required by Kay's procedures, but Plaintiff asserts this was common practice and many other machinists did the same. (*Id.* 67.) After Raker corrected Plaintiff and advised him to be sure to follow each step in the procedures, on that very same day, he was again found not blowing the chucks out. (Def.'s LR 56.1(a)(3) Stmt. ¶ 68.) On April 17, 2002, Plaintiff left his machine improperly sized, but says he did so because his replacement on the next shift told him to leave it that way. (Pl.'s LR 56.1(b) Stmt. ¶ 69.) On April 19, 2002 after completing his shift, Plaintiff was informed that he was being discharged. (Def.'s LR 56.1(a)(3) Stmt. ¶ 73.) During the termination, Plaintiff informed Angela Nowell, Kay's president, and Raker that he had a "problem" with his hand and then abruptly left the office and was found in a nearby locker room in a fetal position on the floor. (Id. ¶¶ 74, 75, 76.) Plaintiff was formally diagnosed with CTS and ulnar neuropathy one month later in May 2002. (Pl.'s LR 56.1(b) Stmt. ¶ 79.) Approximately one year later, Plaintiff had ulnar nerve transposition and CTS release surgery on April 15, 2003. (Def.'s LR 56.1(a)(3) Stmt. ¶ 81.)

## The Legal Standard

In order for a party to prevail on a motion for summary judgment, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we may not weigh the evidence or make any credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

Additionally, where "undisputed facts give rise to disputed inferences," summary judgment is not appropriate. *Harley-Davidson Motor Co., Inc. v. Powersports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) (ruling that "the choice between reasonable inferences from facts is a function of the fact-finder"). *See also Ramirez v. Nutrasweet Co.*, 1997 U.S. Dist. Lexis 17111, at *7 (N.D. Ill. Oct. 27, 1997) ("if the evidence presented by the parties is subject to conflicting interpretations, or if reasonable minds could differ as to its significance, summary judgment must not be granted") (citing *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1366 (7th Cir. 1993)).

## Discussion

Plaintiff alleges that Kay violated the FMLA. That statute entitles an eligible employee to up to twelve workweeks of leave if, among other reasons, "a serious health condition . . . makes the employee unable to perform the functions of [his] position." 29 U.S.C. § 2612(a)(1)(D). To state an FMLA claim, Plaintiff must allege that: (1) he is an eligible employee, meaning he was employed

for at least twelve months by Kay and worked at least 1,250 hours during the preceding twelve-month period (29 U.S.C. §§ 2611(2), 2612(a)(1)); (2) Kay is an employer covered by the statute, or specifically that Kay is "engaged in . . . an[] industry or activity affecting commerce [and] employs 50 or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year" (29 U.S.C. § 2611(4)); (3) Plaintiff was entitled to leave because he had "a serious health condition that ma[de] [him] unable to perform the functions of [his] position" (29 U.S.C. § 2612(a)(1)(D)); and (4) Kay was aware of Plaintiff's need for leave but refused to provide it (29 U.S.C. § 2615(a)(1); 29 C.F.R. §§ 825.302-03).

Prongs one and two are not in dispute. However, Kay claims that Plaintiff has failed to prove that he had a serious health condition that made him unable to perform his job and that Plaintiff has not shown that Kay was aware of his need, but refused to provide for it. Under the FMLA, a serious health condition is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611 (11). The Department of Labor offers some guidance on determining whether a serious health condition involves continuing treatment, stating such treatment is:

> (i) A period of incapacity (i.e., inability to work. . . due to the serious health condition. . . or . . . [the] the recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment. . .relating to the same condition, that also involves:
>
> (A) Treatment two or more times by a health care provider . . .
>
> (B) Treatment by a health care provider on at least one occasion which results in . . . continuing treatment.

29 C.F.R. § 825.114(a)(2).

Courts have concluded that to overcome a summary judgment motion, a plaintiff must present adequate evidence in the record, such as, an affidavit from a doctor, stating that the plaintiff's treatments were medically necessary. *Haefling v. United Parcel Serv., Inc*, 169 F.3d 494, 500 (7th Cir. 1999.) Furthermore, whether an illness or injury constitutes an FMLA "serious health condition," is a question of law to be resolved by the court. *Id.* at 499.

Plaintiff alleges that he had a serious health condition as defined under FMLA in both his right hand and his mental condition. These conditions, independent of one another, must be treated separately. First as to his hand, Plaintiff argues that he suffered from carpal tunnel syndrome and that very condition is what caused the quality of his machinist work to decline. Thus, we must first determine whether Plaintiff's hand condition constituted a serious health condition. In doing so, we need not consider the inpatient care prong of the serious health condition analysis, as there is no evidence that Lozano received such care for his hand. We, therefore, turn to whether Lozano received continuing treatment by a health care provider for his hand condition before his termination.

Plaintiff was not formally diagnosed with CTS until May 2002. Plaintiff was treated in the emergency room for his depression and was told by the treating physician that he "might" have carpal tunnel syndrome and he should follow up with his own doctor regarding that matter. After that encounter, Plaintiff received no formal diagnosis prior to his termination that he suffered from CTS or that he missed any work or was incapacitated because of his alleged CTS. Plaintiff states in his deposition that he informed Raker several times that "something was wrong with his hand." When Plaintiff informed his supervisors of his hand discomfort, he was told to slow down. (*Id.* 85.) Plaintiff did not share this information with any other Kay representatives. (Pl.'s LR 56.1(b) Stmt. ¶ 63.)

Plaintiff has presented nothing in the record that can affirm that because of his hand, he was unable to work or that he received any medical treatment, much less on going or multiple treatments, for his hand. Furthermore, Lozano was not prescribed any medication, nor has he presented any physician's affidavit regarding his hand problems. Without evidence rebutting Defendant's assertion that there was no serious health condition in Plaintiff's hand, we can not conclude that Plaintiff's right hand discomfort actually constituted a serious health condition under FMLA.

Plaintiff further claims that because Defendant should have recognized his CTS symptoms, Defendant had an affirmative duty to inform Lozano of his FMLA rights, but failed to do so. However, because we have determined that Plaintiff's hand did not qualify as a serious health condition prior to his termination, we need not address whether there was proper notice and communication by Defendant with regard to his hand.

Second, we turn to Plaintiff's mental condition. Plaintiff's documented and continually treated mental condition can be considered a serious health condition under FMLA. Furthermore, Plaintiff did inform Defendant of this condition, as he undisputedly advised his supervisor and human resources representative of his ongoing psychiatric care. Plaintiff claims that because Defendant knew of his mental condition Defendant had an affirmative duty to inform Lozano of his FMLA rights, but failed to do so. Defendant does not dispute having knowledge of Plaintiff's mental condition. Accordingly, we must examine whether Plaintiff gave notice that his mental condition was attributed to his low performance and whether Kay's duty to inform and provide him with leave was triggered.

When an employee gives notice for FMLA leave he is not required to expressly mention FMLA, he must simply give some notice of the leave as soon as practicable. 29 C.F.R. § 825.03(a);

29 C.F.R. § 825.208 (a)(2). "An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA- qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c); *Collins v NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. )(holding that plaintiff generally stating she was "sick" was not sufficient to show a serious health condition). When the need for leave is foreseeable, the employee must provide at least a thirty-day notice so the employer can properly anticipate and provide coverage for the absent employee. *Aubuchon v. Knauf*, 359 F. 3d 950, 951 (7th Cir. 2004) (citing 29 U.S.C. § 2612(e)(2)(B); 29 C.F.R. § 825.302(a)). The Seventh Circuit has found that an employee must merely place the employer on notice of a condition, which can be accomplished, for example, by simply a presenting doctor's note indicating a potential health problem. *Aubuchon*, 359 F.3d at 953. Another way an employer can be notified of a potentially serious health condition is by an employee's acute change in behavior. *Byrne v. Avon*, 328 F.3d 379, 381-82 (7th Cir. 2003) (referring to 29 U.S.C. § 2312(e) and *Gilliam v. United Parcel Service*, Inc., 233 F.3d 969 (7th Cir. 2000) (stating that sudden behavioral change as stroke, insulin deficiency or a heart attack can definitively trigger notice and that a change in behavior can itself be an indicator of mental problems.) However, where there is no evidence that any request for leave was made, a plaintiff cannot obtain relief under the FMLA. *Brohm v. JH Prop.*, 149 F.3d 517, 523 (6th Cir. 1998).

It is only once the employee provides sufficient information to constitute notice that a leave is needed that the burden shifts to the employer to obtain further information regarding the employee's condition. *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997). Particularly when there is a factual dispute, whether sufficient notice has been given is often a question of fact. *Price v. City of Fort Wayne*, 117 F.3d 1022, 1026 (7th Cir. 1997) (stating that whether notice of

FMLA illness was given is a question of fact that must be considered in light of the illness and its manifestations).

Plaintiff undisputedly notified Defendant of his mental condition in February and March 2002. Yet it is unclear whether Plaintiff, directly or impliedly, attributed his sub-par performance to his mental condition, thereby triggering Defendant's duty. Plaintiff bears the initial burden of notice and after receiving performance warnings, Plaintiff could have foreseen that his health problems were interfering with his job performance. He did not. In his deposition and affidavit, Lozano merely claims that his low performance resulted from his hand problems. He does not even contend that he informed Raker that he was unable to properly load the machine because of his hand, much less because of his mental condition.

Lozano's cause, however, is not lost. Lozano's performance behavior did change. Prior, in his annual performance evaluations, Lozano had consistently been rated as meets expectations. However, his rating declined to a "meets expectations minus," and he began to incur substantially more official performance warnings and a probation. In *Byrne*, the court determined that it would legally find a serious health condition and proper notice in the cases of sudden illness, as a heart attack or stroke, but where the behavior morphed over time, the court concluded that the trier of fact was to determine whether the behavioral change constituted acceptable notice, thereby triggering an employer's duty to inform an employee of FMLA benefits. *Byrne*, 328 F.3d at 382. In light of this finding and Plaintiff's illness and its manifestations, we believe that there remains a disputed factual issue of whether proper notice was given regarding the Plaintiff's need for leave because of his mental condition and whether Defendant's duty was triggered. Therefore, the matter is more

appropriately reserved for the trier of fact. Accordingly, at this juncture, summary judgment is not appropriate.

### Conclusion

For the reasons stated above, Kay's motion for summary judgment is denied.

**ENTER:**

_____
**UNITED STATES DISTRICT JUDGE**

DATED: __NOV 3 2005__