

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RODRIGO LOZANO, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KAY MANUFACTURING COMPANY, )<br>)<br>Defendant. ) | No. 04 C 2784<br>Paul E. Plunkett, Senior Judge |

## MEMORANDUM OPINION AND ORDER

Rodrigo Lozano ("Plaintiff") has sued Kay Manufacturing Company ("Kay" or "Defendant") for its alleged violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*. Lozano claims Kay violated his rights by refusing to offer benefits as provided by FMLA. Kay seeks summary judgment alleging that because it was never given notice of Plaintiff's need for medical leave, Defendant was in violation of FMLA. For the reasons set forth below, Defendant's motion is denied.

### Background

In January 1999, Plaintiff was hired as a machine operator with Kay and remained in that position until his termination in April 2002. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 4-5, 78.) Plaintiff reported to Wayne Raker and operated a "chucker" machine, which is a machine that grinds and finishes customized metal pieces. (*Id.* ¶¶ 8-10.) To operate the machine, Plaintiff manually inserted and tightened metal parts into the clamp or "chuck" of the machine. (*Id.* ¶ 12.) At each work station, there were written procedures posted to instruct how to properly operate the machine. (*Id.* ¶ 13.) All parts were required to be checked for conformity at the beginning of each shift, every

fifteen minutes during the shift, after lunch, and at the end of the shift. (*Id.* ¶ 15.) Furthermore, employees were required to notify a supervisor if a problem arose with the machine or tools. (*Id.* ¶ 23.) Plaintiff claims that employees often ignored these posted procedures. (Pl.'s LR 56.1(b) Stmt. ¶¶ 13, 15, 23.)

In his first performance evaluation in December 1999, Plaintiff's was rated as "meeting expectations." (Def.'s LR 56.1(b) Stmt. ¶ 25.) Prior to mid-April 2000, Plaintiff and other machinists received oral warnings for producing nonconforming parts from time to time. (*Id.* ¶ 27.) After mid-April however, the frequency of Plaintiff's violations began to increase. On April 21, 2000, Plaintiff was issued a written warning for running 227/337 non-conforming parts, which meant he operated the machine for five hours without checking for conformity. (Def.'s LR 56.1(b) Stmt. ¶ 28.)

Despite this incident, in his January 24, 2001 annual performance evaluation, Plaintiff was again rated as "meeting expectations." (Def.'s LR 56.1(b) Stmt. ¶ 31.) On August 3, 2001, Raker discovered that Plaintiff did not have his cutting tools properly adjusted. (Def.'s LR 56.1(b) Stmt. ¶ 32.) Later that same month, Plaintiff's machine broke down and, although he claims at the direction of his supervisor, he tried to repair it on his own; company procedures instruct him to involve a supervisor. (Pl.'s LR 56.1(b) Stmt. ¶ 35.) Then, on August 24, 2001, Plaintiff was issued another written warning and was officially put on probation. (Def.'s LR 56.1(b) Stmt. ¶¶ 36, 37.) Plaintiff admits he received this warning and probation, but contends that the reasons for the warning do not accurately recount what occurred. (Pl.'s LR 56.1(b) Stmt. ¶¶ 36, 37.) Lozano was taken off probation five months later during his January 2002 performance evaluation, in which he was rated "below expectations" and "meeting expectations minus." (*Id.* ¶ 39, 40.)

On January 15, 24, 25, 28 2002, Plaintiff was absent from work due to an illness. (Def.'s LR 56.1(a)(3) Stmt. ¶ 38.) Plaintiff was seen in the emergency room on January 25, 2003, and was discharged with a diagnosis of hyperglycemia. (*Id.* ¶ 47.) Plaintiff again visited the hospital on February 5, 2002, and was discharged with a diagnosis of tremors, diabetes and hyperventilation. (*Id.* ¶¶ 48, 49.) Plaintiff was subsequently absent from work from February 6, 2002 to March 17, 2002. (*Id.* ¶ 50.) During this absence, Plaintiff received discharge papers from a hospital stating a diagnosis of delirium tremens and diabetes mellitus. (*Id.* ¶ 52.) Hospital records also show that Plaintiff was seen because of suicidal ideation and possible chronic drug overdose, but the diagnosis, according to Plaintiff, was later changed to major depression and panic attacks. (*Id.* ¶¶ 54, 56; Pl.'s LR 56.1(b) Stmt. ¶¶ 54, 56.)

On March 18, 2002, Plaintiff presented a note stating that he had been in doctor's care; he was able to return to work on a full-time basis; and he was allowed to do so. (Def.'s LR 56.1(a)(3) Stmt. ¶ 64.) Kay paid Plaintiff short-term disability benefits for his extended absence from February 6, 2002 to March 17, 2002. (*Id.* ¶ 65.) Plaintiff informed Kay's human resources manager, Angela Nowell, of his anxiety problems and indicated on his application for short-term disability benefits that he had been absent because of anxiety and diabetic complications, as well as major depression and panic attacks. (*Id.* ¶ 60.). Nowell was given Plaintiff's doctor's statement that indicated that he was suffering from "major depression." (*Id.* ¶ 62, 63.)

According to Lozano, he was able to perform his job, except for his limitations resulting from his major depression, severe panic/anxiety disorder, ulnar nerve disorder and carpal tunnel syndrome ("CTS"). (Pl.'s LR 56.1(b) Stmt. ¶ 89.) Plaintiff claims to have been unaware of the FMLA benefits available for such a condition. (*Id.* ¶ 93.)

Meanwhile, after his return, Plaintiff admittedly continued to make mistakes. On March 20, 2002, he improperly loaded a machine and consequently made non-conforming parts that had to be discarded. (Def.'s LR 56.1(b) Stmt. ¶ 72.) On April 1, 2002, the machine was again improperly sized. (*Id.* ¶ 73.) On April 11, 2002, Plaintiff also threw a part out of the machine due to improper loading. (*Id.* ¶ 74.) On April 15, 2002, Plaintiff was observed not "blowing out the chucks" as required by Kay's procedures. (*Id.* ¶ 75.) After Raker corrected Plaintiff and advised him to be sure to follow each step in the procedures, on that very same day, he was again found not blowing the chucks out. (Def.'s LR 56.1(a)(3) Stmt. ¶ 76.) On April 17, 2002, Plaintiff left his machine improperly sized. (Pl.'s LR 56.1(b) Stmt. ¶ 77.) On April 19, 2002, after completing his shift, Plaintiff was informed that he was being discharged. (Def.'s LR 56.1(a)(3) Stmt. ¶ 81.) During the termination, Plaintiff informed Nowell, Kay's president, and Raker that he had a "problem" with his hand and then abruptly left the office and was found in a nearby locker room curled up in fetal position on the floor. (*Id.* ¶¶ 82-84.) Paramedics were called, and they took Plaintiff to the hospital, where he remained in the psychiatric ward for one to two weeks. (*Id.* ¶¶ 85-86.)

## **The Legal Standard**

In order for a party to prevail on a motion for summary judgment, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we may not weigh the evidence or make any credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the nonmoving party. *Payne v. Pauley*, 337 F.3d

767, 770 (7th Cir. 2003). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

Additionally, where "undisputed facts give rise to disputed inferences," summary judgment is not appropriate. *Harley-Davidson Motor Co., Inc. v. Powersports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) (ruling that "the choice between reasonable inferences from facts is a function of the fact-finder"). *See also Ramirez v. Nutrasweet Co.*, 1997 U.S. Dist. Lexis 17111, at *7 (N.D. Ill. Oct. 27, 1997) ("if the evidence presented by the parties is subject to conflicting interpretations, or if reasonable minds could differ as to its significance, summary judgment must not be granted") (citing *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1366 (7th Cir. 1993)).

## **Discussion**

In Defendant's second motion for summary judgment, it claims that because proper notice of a serious health condition was not provided, it was under no obligation to inform Plaintiff of his right to medical leave under the FMLA. In this Court's November 3, 2005 memorandum opinion and order, we determined that Plaintiff's hand did not qualify as a serious health condition, which ended our analysis of that claim. However, we believe that the issue as to whether notice was given regarding Plaintiff's mental condition was not fully briefed. On November 10, 2005, we granted Defendant leave to file a second motion for summary judgment solely on the issue of Plaintiff's mental condition.

Plaintiff alleges that Kay violated the FMLA. That statute entitles an eligible employee up to twelve workweeks of leave if, among other reasons, "a serious health condition . . . makes the employee unable to perform the functions of [his] position." 29 U.S.C. § 2612(a)(1)(D). To state

an FMLA claim, Plaintiff must allege that: (1) he is an eligible employee, meaning he was employed for at least twelve months by Kay and worked at least 1,250 hours during the preceding twelve-month period (29 U.S.C. §§ 2611(2), 2612(a)(1)); (2) Kay is an employer covered by the statute, or specifically that Kay is "engaged in . . . an[] industry or activity affecting commerce [and] employs 50 or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year" (29 U.S.C. § 2611(4)); (3) Plaintiff was entitled to leave because he had "a serious health condition that ma[de] [him] unable to perform the functions of [his] position" (29 U.S.C. § 2612(a)(1)(D)); and (4) Kay was aware of Plaintiff's need for leave but refused to provide it (29 U.S.C. § 2615(a)(1); 29 C.F.R. §§ 825.302-03).

Prongs one, two, and three are not in dispute. However, Kay claims that Plaintiff has failed to prove that he notified Kay of his need for an FMLA leave. Plaintiff did inform Defendant of this condition, as he undisputedly advised his supervisor and human resources representative of his ongoing psychiatric care. Plaintiff claims that because Defendant knew of his mental condition Defendant had an affirmative duty to inform Lozano of his FMLA rights, but failed to do so. Although Defendant does not dispute having knowledge of Plaintiff's mental condition, Defendant does argue that it did not have notice that Plaintiff needed leave under FMLA for that condition. Accordingly, we examine whether Plaintiff gave notice that his low performance was caused by his mental condition. If so, Kay's duty to inform and provide Plaintiff with leave was triggered.

When an employee gives notice for FMLA leave, he is not required to expressly mention FMLA; he must simply give some notice of the leave as soon as practicable. 29 C.F.R. § 825.03(a); 29 C.F.R. § 825.208 (a)(2). "An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA- qualifying leave, and the anticipated timing and

duration of the leave." 29 C.F.R. § 825.302(c); *Collins v NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. )(holding that plaintiff generally stating she was "sick" was not sufficient to show a serious health condition). When the need for leave is foreseeable, the employee must provide at least a thirty-day notice so the employer can properly anticipate and provide coverage for the absent employee. *Aubuchon v. Knauf*, 359 F. 3d 950, 951 (7th Cir. 2004) (citing 29 U.S.C. § 2612(e)(2)(B); 29 C.F.R. § 825.302(a)). However, the Seventh Circuit has found that an employee must merely place the employer on notice of a condition, which can be accomplished, for example, by simply presenting a doctor's note indicating a potential health problem. *Aubuchon*, 359 F.3d at 953. Another way an employer can be notified of a potentially serious health condition is by an employee's acute change in behavior. *Byrne v. Avon*, 328 F.3d 379, 381-82 (7th Cir. 2003) (referring to 29 U.S.C. § 2312(e) and *Gilliam v. United Parcel Service*, Inc., 233 F.3d 969 (7th Cir. 2000) (stating that sudden behavioral change as stroke, insulin deficiency or a heart attack can definitively trigger notice and that a change in behavior can itself be an indicator of mental problems.) But, where there is no evidence that any request for leave was made, a plaintiff cannot obtain relief under the FMLA. *Brohm v. JH Prop.*, 149 F.3d 517, 523 (6th Cir. 1998).

It is only once the employee provides sufficient information to constitute notice that a leave is needed that the burden shifts to the employer to obtain further information regarding the employee's condition. *Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997). Particularly when there are factual discrepancies, whether sufficient notice has been given should be categorized as a question of fact. *Price v. City of Fort Wayne*, 117 F.3d 1022, 1026 (7th Cir. 1997) (stating that whether notice of FMLA illness was given is a question of fact that must be considered in light of the illness and its manifestations).

Plaintiff undisputedly notified Defendant of his mental condition in February and March 2002. Yet it is unclear whether Plaintiff, directly or impliedly, attributed his sub-par performance to his mental condition, thereby triggering Defendant's duty. Plaintiff bears the initial burden of notice and although he does not contend that he informed Raker that he was unable to properly load the machine because of his mental condition, Plaintiff states in his affidavit that he informed Nowell that his depression prevented him from doing his job. Furthermore, Nowell received written documentation from Plaintiff's doctor that he had been diagnosed with major depression. These two, alone, support the inference that Kay was sufficiently informed of Plaintiff's potential health problems.

Nevertheless, we also examine whether Plaintiff's declining performance could have also triggered notice under *Byrne*. In that case, the court determined that it would legally find a serious health condition and proper notice in the cases of sudden illness, as a heart attack or stroke, but where the behavior morphed over time, the court concluded that the trier of fact was to determine whether the behavioral change constituted acceptable notice, thereby triggering an employer's duty to inform an employee of FMLA benefits. *Byrne*, 328 F.3d at 382.

Here, both parties agree that Plaintiff's job performance was substandard prior to his termination. Defendant contends Plaintiff's performance was always lacking and there was no change to put Defendant on notice. Moreover, Defendant states that *Byrne* does not apply because, unlike in the instant matter, the plaintiff there had four years of exceptional service prior to deteriorating. Defendants claim that *Byrne* is also unique because there was testimony from the plaintiff's confidants stating he was sick, implying the plaintiff was behaving unusually.

We disagree with Defendant's distinction of *Byrne*. Like the plaintiff there, in the case at hand we see evidence that establishes Plaintiff, too, spoke of his mental condition and it was because of his mental condition that his performance deteriorated. Prior to 2002, in his annual performance evaluations, Lozano was consistently rated as "meets expectations." Throughout his three years with Kay, Plaintiff gradually incurred an increased number of official performance warnings, including probation. This progression led to his January 2002 performance evaluation rating of "meets expectations minus." We find that we are not presented with a situation where a sudden change occurred allowing us to state that, as a matter of law, notice was given. Rather, we find a Plaintiff whose behavior has progressively morphed over time, and in such circumstances, the matter is one that is better suited for the trier of fact.

As the Seventh Circuit instructs us, whether notice of FMLA illness was given is a question of fact that must be considered in light of the illness and its manifestations. *Price,* 117 F.3d at 1026. We believe, it must be further examined in light of Plaintiff's mental illness and its symptoms and affects, whether he properly gave notice. In light of the above, we believe that there remains a disputed issue of material fact and thus, summary judgment is not appropriate.

## Conclusion

For the reasons stated above, Kay's motion for summary judgment is denied.

**ENTER:**

_____
UNITED STATES DISTRICT JUDGE

**DATED:** MAR 2 8 2006